IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NUMBER H-25-220-01 |
| | § | |
| TADEO PEDRO-TORRES, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Tadeo Pedro-Torres ("Defendant") is charged with one count of willfully and knowingly making a materially false statement in a matter within the jurisdiction of the executive branch of the United States, in violation of 18 U.S.C. § 1001(a)(2).[1] Pending before the court is Defendant's Motion to Suppress Evidence ("Defendant's MTS") (Docket Entry No. 22). Defendant argues that the statements he made to Customs and Border Patrol and to Catholic Charities caseworkers should be suppressed because he was interrogated while in custody without Miranda warnings.

### I.  Factual Background

On October 25, 2024, Defendant was encountered by Customs and Border Patrol ("CBP") in the El Paso, Texas, Border Patrol Sector.[2]

---

[1] Indictment, Docket Entry No. 9, p. 1. For purposes of identification all page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing system.

[2] Record of Deportable/Inadmissible Alien (Form I-213), Exhibit 1 to Defendant's MTS, Docket Entry No. 22-2, p. 3.

Upon determining that Defendant had illegally entered the United States, Defendant was transferred to the El Paso Sector Hardened Facility.[3]  Without <u>Miranda</u> warnings, Defendant was questioned by an immigration officer about his citizenship, immigration status, national origin, and date of birth.[4] Defendant stated that his date of birth was November 11, 2007.[5] Believing that Defendant was a minor, CBP placed him in the custody of the United States Department of Health and Human Services ("DHHS"), which is responsible for unaccompanied alien children.[6] CBP also issued Defendant a Notice to Appear for civil immigration removal proceedings.[7]

DHHS placed Defendant in the care of Catholic Charities, a shelter that is contracted to care for unaccompanied juveniles.[8] While at Catholic Charities juvenile shelter, Defendant represented to caseworkers that he was sixteen years old when Defendant was

---

[3] <u>Id.</u> at 3-4.

[4] <u>Id.</u> at 3-5.

[5] <u>Id.</u> at 2.

[6] DHHS Placement Authorization, Exhibit 2 to Defendant's MTS, Docket Entry No. 22-3, pp. 2-3.

[7] Notice to Appear, Exhibit 6 to the United States of America's Opposition to Defendant's Motion to Suppress ("Government's Opposition"), Docket Entry No. 26-2, p. 2.

[8] Administration for Children & Families - Memo of Age Redetermination, Exhibit 3 to Defendant's MTS, Docket Entry No. 22-4, pp. 2-3.

actually twenty-one years old.[9] When Defendant's sister provided a birth certificate that conflicted with Defendant's self-reported age, Catholic Charities requested verification from the Guatemalan consulate.[10] The Guatemalan consulate confirmed that the birth certificate had been altered and provided Catholic Charities with Defendant's correct date of birth, June 18, 2003.[11] Upon learning Defendant's correct age, caseworkers from Catholic Charities spoke to Defendant and gave him an opportunity to provide information about his age.[12] Defendant admitted that his date of birth was June 18, 2003, and signed a statement as to his true age.[13] On December 4, 2024, Defendant was discharged from Catholic Charities and was transferred to ICE custody for removal proceedings. On May 1, 2025, Defendant was indicted for violating 18 U.S.C. § 1001(a)(2).[14]

## II. **Applicable Law**

The Fifth Amendment to the United Stats Constitution states that "[n]o person shall . . . be compelled in any criminal case to

---

[9] Id.; Catholic Charity Case Review, Exhibit 7 to Government's Opposition, Docket Entry No. 26-3, p. 7.

[10] Catholic Charity Email to Guatemalan Consulate, Exhibit 4 to Defendant's MTS, Docket Entry No. 22-5, p. 2.

[11] Id.; Catholic Charities Age Redetermination Memo, Exhibit 3 to Defendant's MTS, Docket Entry No. 22-4, pp. 2-3.

[12] Catholic Charities Age Redetermination Memo, Exhibit 3 to Defendant's MTS, Docket Entry No. 22-4, p. 2.

[13] Id.

[14] Indictment, Docket Entry No. 9, p. 1.

be a witness against himself." U.S. CONST. amend. V. In <u>Miranda v. Arizona</u>, 86 S. Ct. 1602 (1966), the Supreme Court held that the privilege against self-incrimination is jeopardized when a person is in custody and subjected to interrogation. <u>Id.</u> at 1630. Therefore, prior to a custodial interrogation, a defendant must be made aware that they have the right to remain silent, that any statement may be used as evidence against them, and that they have a right to an attorney. <u>Id.</u>

A suspect is considered to be in custody when formally arrested or when a reasonable person in the suspect's position would not have felt free to leave. <u>United States v. Cavazos</u>, 668 F.3d 190, 193 (5th Cir. 2012). An interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody," <u>Miranda</u>, 86 S. Ct. at 1612, or a functional equivalent, which includes "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response . . ." <u>Rhode Island v. Innis</u>, 100 S. Ct. 1682, 1689–90 (1980).

However, certain questioning is not subject to <u>Miranda</u>. Under the routine booking exception, "'questions . . . reasonably related to the police's administrative concerns . . . fall outside the protections of <u>Miranda</u> . . . and the answers thereto need not be suppressed.'" <u>Maryland v. King</u>, 133 S. Ct. 1958, 1975 (2013) (quoting <u>Pennsylvania v. Muniz</u>, 110 S. Ct. 2638, 2650 (1990)). This includes questions to secure the "'biographical data necessary

-4-

to complete booking or pretrial services.'" Muniz, 110 S. Ct. at 2641.

### III. Analysis

**A. The questioning by Customs and Border Protection falls under the routine booking exception to Miranda.**

Under the routine booking exception to Miranda, questions asked by immigration officers for the purpose of completing Form I-213[15] are not required to be suppressed because they are administrative and biographical in nature. United States v. Palacios, Criminal Action No. H-17-221-01, 2017 WL 2378924, *5 (S.D. Tex. May 31, 2017); see also United States v. Vasquez-Vasquez, Criminal Number H-21-220, 2023 WL 8830737, *2 (S.D. Tex. Dec. 21, 2023); United States v. Romero-Gonzalez, Criminal Action No. 4:22-cr-00028-1, 2024 WL 54986, *3 (S.D. Tex. Jan. 4, 2024). Although immigration processing can evolve into a criminal investigation, Miranda warnings are only required during immigration processing when the "individual asking questions has reason to believe that prosecution will result from the information" they gather. United States v. Alamo-Gutierrez, 368 F. Supp. 3d 1093, 1105 (W.D. Tex. 2019) (quoting United States v. Lugo, 289 F. Supp. 2d 790, 798 (S.D. Tex. 2003)); see also United States v. Chavira, 614 F.3d 127, 133-35 (5th Cir. 2010).

---

[15] Form I-213 is used by CBP to determine if an immigration detainer should be placed upon the defendant.

Defendant argues that under <u>Chavira</u> and <u>Alamo-Gutierrez</u>, Defendant's statements must be suppressed because CBP knew their questioning would likely lead to an incriminating response regarding Defendant's immigration status. In <u>Chavira</u> immigration officers questioned the suspect in a secondary location after the officers had already determined that she had committed a crime. 614 F.3d at 133. The additional questioning had "no reasonable immigration related purpose." <u>Id.</u> Because the case changed from "a routine immigration case to an essentially criminal law enforcement case," the court held that the questioning was an interrogation for purposes of <u>Miranda</u> and therefore fell outside of the routine booking exception. <u>See id.</u> at 133 n.8. In <u>Alamo-Gutierrez</u> immigration officers questioned a suspect about his immigration status after learning he had served a sentence for driving while intoxicated. 368 F. Supp. 3d at 1105. The court held that this was an interrogation for purposes of <u>Miranda</u> because the immigration officers were "seeking to elicit responses that would reveal" the immigration offense of illegal reentry. <u>Id.</u>

Unlike the suspects in <u>Chavira</u> and <u>Alamo-Gutierrez</u>, Defendant was processed as an inadmissible alien and was never treated as a criminal suspect by CBP. When Defendant was questioned by CBP it was for the sole purpose of completing Form I-213 and determining whether unaccompanied minor protections applied to him. Under the reasoning explained in <u>Palacios</u>, <u>Vasquez-Vasquez</u>, and

Romero-Gonzalez, Defendant's questioning falls within the routine booking exception and his statements are therefore not subject to suppression.

## B. The statements made to Catholic Charities caseworkers are not within the scope of Miranda.

An interrogation for the purposes of Miranda is an express "questioning initiated by law enforcement officers after a person has been taken into custody," Miranda, 86 S. Ct. at 1612 (emphasis added), or a functional equivalent, which includes "words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response . . ." Innis, 100 S. Ct. at 1689-90 (emphasis added). An interrogation for purposes of Miranda may also include questioning by an individual that was recruited by law enforcement to "solicit incriminating information from a defendant." United States v. Borchardt, 809 F.2d 1115, 1119 (5th Cir. 1987).

Catholic Charities is a private organization that contracted with DHHS to provide care to unaccompanied juveniles.[16] Its role is to care for juveniles placed in its custody by DHHS, not to enforce the law. There is no evidence that Catholic Charities was acting on behalf of law enforcement when questioning Defendant. The caseworker's inquiry into Defendant's age was solely to determine whether Defendant was eligible for Catholic Charities'

---

[16] Government's Opposition, Docket Entry No. 26, p. 3.

services. For these reasons, Defendant's questioning is not within the scope of <u>Miranda,</u> and his statements are therefore not subject to suppression.

### IV. Conclusions and Order

Because Custom and Border Patrol's questioning falls under the routine booking exception to <u>Miranda</u> and because Catholic Charities caseworkers are not law enforcement officers, Defendant's Motion to Suppress Evidence (Docket Entry No. 22) is **DENIED**.

**SIGNED** at Houston, Texas, on this 10th day of September, 2025.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE